**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | |
|---|---|
| SERGIO OSVALDO MARRERO RAMIREZ,<br>Petitioner,<br><br>vs.<br><br>MARKWAYNE MULLIN, et al.,<br><br>Respondents. | No. 26-CV-4051-CJW-MAR<br><br>**ORDER** |

---

Petitioner Sergio Osvaldo Marrero Ramirez's amended petition for writ of habeas corpus is before the Court. (Doc. 9). Respondents filed a response. (Doc. 11). Petitioner filed a reply. (Doc. 22). For the following reasons, the Court **denies** petitioner's petition for writ of habeas corpus.

## *I. BACKGROUND*

Petitioner is a citizen of Cuba. (Doc. 9, at 1; 13-2, at 2). On January 8, 1998, he was paroled into the United States. (Doc. 13-2, at 2). On June 13, 2002, he became a lawful permanent resident. (*Id.*).

Since arriving in the United States, petitioner has been convicted of ten criminal offenses. On April 19, 2001, he was convicted of operating while under the influence, first offense, and sentenced to one year in jail with all but two days suspended and one year of probation. *State v. Marrero Ramirez*, OWOM052570 (Dist. Ct. Polk Cnty. 2001). On March 3, 2003, he was convicted of operating while under the influence, second offense, and sentenced to two years in jail with all but seven days suspended and two years of probation. *State v. Marrero Ramirez*, OWOM055923 (Dist. Ct. Polk Cnty. 2003). On February 5, 2004, he was convicted of driving while license denied or revoked

and sentenced to a fine. *State v. Marrero Ramirez*, SRCR179648 (Dist. Ct. Polk Cnty. 2004). On March 25, 2004, he was convicted of interference with official acts and sentenced to one day in jail. *State v. Marrero Ramirez*, SMAC264900 (Dist. Ct. Polk Cnty. 2004). On July 23, 2004, he was convicted of three class "C" felony controlled substance violations and sentenced to thirty years in prison with thirty years suspended and six years of probation. *State v. Marrero Ramirez*, FECR182603 (Dist. Ct. Polk Cnty. 2004). On April 19, 2005, he was released from prison. (Doc. 13-8).

On January 28, 2008, petitioner was sentenced to a second operating while under the influence, second offense, and sentenced to one year in jail with all but 320 days suspended and two years of probation. *State v. Marrero Ramirez*, OWOM063781 (Dist. Ct. Polk Cnty. 2008). On March 18, 2010, petitioner was convicted of a class "B" felony controlled substance violation and sentenced a term not to exceed forty-five years in prison. *State v. Marrero Ramirez*, FECR182603 (Dist. Ct. Polk Cnty. 2010). On October 30, 2014, he was released from prison. (Doc. 13-8). On March 28, 2024, he was convicted of assault while displaying a dangerous weapon and sentenced to two years in prison with two years suspended and two years of probation. *State v. Marrero Ramirez*, AGCR376931 (Dist. Ct. Polk Cnty. 2024).

On December 16, 2004, while serving his prison sentence for the class "C" felony controlled substance violations, the Immigration and Nationalization Service ("INS") served petitioner with a Notice to Appear, charging him with being removable from the United States for being convicted of an aggravated felony and an offense related to the illicit trafficking of a controlled substance, specifically, methamphetamine. (Doc. 13-2); *see* 8 U.S.C. § 1227(a)(2)(A)(iii). On June 15, 2005, an immigration judge ordered petitioner removed to Cuba. (Doc. 13-3). On June 28, 2005, the INS issued a warrant for petitioner's arrest. (Doc. 13-4). On September 22, 2005, Immigrations and Customs

Enforcement ("ICE") released petitioner on an order of supervision because they were unable to obtain a travel document for him. (Doc. 13-5, at 1).

On July 15, 2025, ICE issued a notice of revocation of that release, stating to petitioner that "[e]fforts to remove you from the United States are ongoing and ICE expects your removal to occur in the reasonably foreseeable future." (*Id.*); *see also* 8 C.F.R. § 241.13(i) (authorizing revocation of supervised release). The notice advised petitioner that he must make reasonable efforts to comply with the order of removal including by making timely application for travel documents. (Doc. 13-5, at 1). On September 3, 2025, ICE informed petitioner that it intended to remove petitioner to Mexico. (Doc. 13-6).

On September 7, 2025, ICE sent petitioner to El Paso, Texas for staging for removal to Mexico. (Doc. 13-1, at 4). On November 5, 2025, ICE transferred petitioner to the Florence Staging Facility in Arizona to effectuate his removal to Mexico. (*Id.*) Petitioner refused to get on the bus and ICE returned him to Omaha. (*Id.*). On December 17, 2025, ICE served petitioner a notice of failure to comply, stating to petitioner:

> You have failed to assist ICE in applying for a travel document. You have not been forthcoming in relation to your citizenship. You arrived and were admitted to the United States . . . on a Cuban passport and claimed to be from Cuba. You have been ordered removed from the United States by an Immigration Judge to Cuba or an alternative country. When Deportation Officers tried to remove you to Mexico, you refused. You have failed to comply with your obligation and are acting to prevent your removal from the United States. The removal period is therefore extended in your case.

(Doc. 13-7, at 1).

On July 8, 2026, petitioner filed the instant amended petition for habeas corpus. (Doc. 9). On July 22, 2026, respondents filed a response along with a declaration from A. Bates and Exhibits A, B, C, D, E, F, and G. (Docs. 11, 13-1 through 13-8). In their declaration, A. Bates stated that "ICE will make arrangements for [petitioner's] removal

once he is willing to cooperate with his removal to Mexico. Currently Mexico is willing to accept [p]etitioner." (Doc. 13-1, at 5).

On July 27, 2026, petitioner had a credible fear interview with a Department of Homeland Security ("DHS") asylum officer. (Doc. 20-1). The interview was "to determine whether it is more likely than not that [petitioner] will be tortured in Mexico." (*Id.*). Following the interview, the DHS asylum officer found that petitioner did not meet his burden and "did not establish that it is more likely than not [he] will be persecuted or tortured in Mexico." (*Id.*). On August 11, 2026, petitioner filed a reply and provided the Court with Exhibits 1 and 2. (Docs. 22, 20-1, 20-2). Petitioner remains detained at the Sioux County Jail. (Doc. 9, at 2).

## *II. LEGAL STANDARD*

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). Habeas corpus relief is available to those "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The right to challenge the legality of a person's confinement "through a petition for a writ of habeas corpus . . . extends to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citing *Presider v. Rodriguez*, 411 U.S. 475, 485 (1973); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); and *Demore v. Kim*, 538 U.S. 510, 517 (2003)). The petitioner bears the burden of proving by a preponderance of the evidence that their detention is unlawful. *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025); *Walker v. Johnston*, 312 U.S. 275, 286 (1941); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("[T]he burden of proof under § 2241 is on the prisoner."); *Odell v. Hudspeth*, 189 F.2d 300, 302 (10th Cir. 1951) (stating that the burden of proof was upon the petitioner).

## *III. DISCUSSION*

Petitioner asks for "his immediate release as well as an order enjoining his removal to Mexico without [r]espondents following the proper procedures." (Doc. 9, at 1). He also asks that the Court "return him to the conditions of his prior" order of supervision. (*Id.*, at 3). He argues that his current detention is not within the period reasonably necessary to bring about his removal and thus violates due process and that ICE failed to follow its regulations in redetention and thus violated the Administrative Procedure Act. (*Id.*, at 8, 19). He also challenges his claimed lack of a credible fear interview. (*Id.*, at 22–26). Respondents argue "[p]etitioner's removal is not merely foreseeable – it would have already occurred but for [p]etitioner's refusal to cooperate with the removal order." (Doc. 11, at 2).

### *A. Initial Matters*

As an initial matter here, the Court notes that this case is distinct from other habeas cases heard by this Court in which the petitioner requested release on bond under Title 8, United States Code, Section 1226(a). Here, both parties agree that petitioner's detention is governed by Title 8, United States Code, Section 1231. *See* (Docs. 9, at 7; 11, at 2). Petitioner's challenges are confined to, rather than the fact of detention, its length past that initial removal period and whether there is a significant likelihood of his removal in the reasonably foreseeable future. As a second initial matter, petitioner had a credible fear interview on July 27, 2026. *See* (Docs. 20-1; 22, at 2 (petitioner acknowledging that he had an interview)). The Court does not consider petitioner's arguments as to the lack of a credible fear interview any further, as those arguments are now moot. The Court, instead, turns to petitioner's length of detention claim first.

### *B.* **Zadvydas** *Claim*

Section 1231(a)(2)(A) requires that during the ninety-day "removal period, the Attorney General shall detain the alien. Under no circumstance during the removal

period shall the Attorney General release an alien who has been found inadmissible" for, among other things, a conviction for a controlled substance offense or an aggravated felony. *SeeMumad v. Garland*, 11 F.4th 834, 837 (8th Cir. 2021) ("Under the Immigration and Nationality Act, Congress directs the Attorney General to remove an alien from the country within ninety days of a removal order.") (citing 8 U.S.C. § 1231(a)(1)(A)). When the government is not able to remove an alien to the country on the order of removal, the government may remove that alien to a third country, in other words, a "country whose government will accept the alien into that country." 8 U.S.C. § 1231(b)(2)(E)(vii). There is a specific exception to third country removals for third countries in which an alien would face persecution or torture. *See id.* § 1231(b)(3)(A); 8 C.F.R. §§ 208.16–18, 1208.16–18. After the ninety-day removal period, aliens convicted of controlled substance offenses or aggravated felonies, along with others, "may be detained[.]" 8 U.S.C. § 1231(a)(6).

The U.S. Supreme Court has found that six months of discretionary detention following the ninety-day removal period is presumptively reasonable. *Zadvydas*, 533 U.S. at 701. After six months, "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Further, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the [g]overnment must respond with evidence sufficient to rebut that showing." *Id.*; *see also* 8 C.F.R. § 241.13(g)-(h) (outlining the procedure for review of detention based on a significant likelihood of removal). "Attempts by ICE to obtain travel documents from the government of a country to take [petitioner] might be enough to rebut the showing that removal was not reasonably likely in the reasonably foreseeable future." *Herdem v. Lyons*, No. 4:26CV3158, 2026 WL 2234435, at *11 (D. Neb. Aug. 4, 2026). A court may also consider "evidence of actual efforts to obtain [petitioner's] removal to a third

country." *Id.* at *12. At the same time, "[t]he bare fact that ICE officials . . . have requested third-country removal assistance from ICE headquarters" was found insufficient to demonstrate that removal was significantly likely in the reasonably foreseeable future. *Roble v. Bondi*, 803 F.Supp.3d 766, 773 (D. Minn. 2025).

This six-month presumption of reasonableness applies to aliens found inadmissible for controlled substance or aggravated felony convictions, like petitioner. *Clark v. Martinez*, 543 U.S. 371, 378 (2005) (stating that "[s]ince the [g]overnment has suggested no reason why the period of time reasonably necessary to effect removal is longer for an inadmissible alien, the 6–month presumptive detention period we prescribed in *Zadvydas* applies" and ordering two petitions for habeas corpus granted). "The remedy for a *Zadvydas* claim is generally release of the habeas petitioner under conditions of supervision." *Gomez v. Mattos*, 817 F.Supp.3d 1002, 1013 (D. Nev. 2025) (ordering petitioner "released from detention immediately under reasonable terms of supervision set forth in 8 U.S.C. § 1231(a)(3)"); *see also Raciel Z.P. v. Noem*, No. 26-CV-0249 (KMM/SGE), 2026 WL 568266, at *6 (D. Minn. Feb. 13, 2026) (ordering Cuban national released "subject to the conditions in his prior order of supervision" despite the government nominating petitioner's case for third country removal to Mexico).

At the same time, in addition to discretionary detention during the time during which removal is reasonably likely in the foreseeable future,

> [t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

8 U.S.C. § 1231(a)(1)(C); *see also Laguardia v. Immigr. & Customs Enf't*, No. C26-4003-LTS-KEM, 2026 WL 440749, at *2 (N.D. Iowa Feb. 17, 2026) ("Because [petitioner]'s extended detention is based on his own failure to cooperate with removal

efforts, rather than any Government action in failing to timely execute a removal order, his extended detention is reasonable and his § 2241 petition must be denied."). Under 1231(a)(1)(C), "ICE can continue to detain the petitioner because the keys to the petitioner's freedom are in his pocket and he could likely effectuate his removal by providing the information requested, so he cannot convincingly argue that there is no significant likelihood of removal." *Singh v. Att'y Gen.*, 945 F.3d 1310, 1314 (11th Cir. 2019) (citing *Pelich v. Immigr. & Naturalization Servs.*, 329 F.3d 1057, 1060 (9th Cir. 2003) (cleaned up). Thus, "*Zadvydas* does not save an alien who fails to provide requested information necessary to effectuate his removal. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if he controls the clock." *Pelich,* 329 F.3d at 1060.

As the Ninth Circuit summarized the standard:

> when an alien refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government, the alien cannot meet his or her burden to show there is no significant likelihood of removal in the reasonably foreseeable future. We cannot know whether an alien's removal is a "remote possibility," *Zadvydas,* 533 U.S. at 690, until the alien makes a full and honest effort to secure travel documents. A particular alien may have a very good chance of being removed, but if that alien is refusing to cooperate fully with officials to secure travel documents, neither the INS nor a court can sensibly ascertain the alien's chance of removal. Moreover, the due process concerns that motivated the Supreme Court in *Zadvydas* do not apply when an alien may have "the keys [to freedom] in his pocket." *See Pelich*, 329 F.3d at 1060. We conclude that 8 U.S.C. § 1231(a)(1)(C), interpreted mindful of the concerns underlying *Zadvydas* and *Pelich,* authorizes the INS's continued detention of a removable alien so long as the alien fails to cooperate fully and honestly with officials to obtain travel documents.

*Lema v. Immigr. & Naturalization Servs.*, 341 F.3d 853, 856 (9th Cir. 2003) (internal citations modified).

Here, the Court finds that petitioner's claim fails at the first prong under *Zadvydas*. The government has presented evidence of efforts to transport petitioner to the border for removal to Mexico and that petitioner refused to get on the bus and, prior to that, refused to participate in applying for travel documents. Petitioner acknowledges that he "has not consented to removal to Mexico." (Doc. 9, at 3). Given those facts, the Court finds that petitioner's removal is reasonably likely in the foreseeable future but that it is his refusal to make timely application for travel documents and his acts preventing his removal that have made such removal delayed. Petitioner may not resist removal to the designated third country to effectuate his release from detention as detention is explicitly authorized to extend past the ninety-day removal period based on that resistance. Petitioner controls the clock and has the keys to his freedom in his pocket. Thus, this claim does not entitle petitioner to release.

***C. Violation of Regulations on Revocation of Release Claim***

Petitioner's argument regarding who can sign the revocation of release form overlooks the key part of the regulations authorizing signature by others: "All references to the Executive Associate Commissioner, the Director of the Detention and Removal Field Office, and the district director in this section shall be deemed to include any person or persons (including a committee) designated in writing by the Executive Associate Commissioner, the Director of the Detention and Removal Field Office, or the district director to exercise powers under this section." 8 C.F.R. § 241.4(c)(4). The Notice of Revocation of Release here was signed by the Acting Deputy Field Office Director, who the Court finds falls under Section 241.4(c)(4).

The other arguments raised as to violation of the regulations the Court finds contradicted by Exhibit D. (Doc. 13-5). Petitioner received a written decision stating that his case had been reviewed, listing the reason for his redetention as there being a significant likelihood of his removal in the reasonably foreseeable future, providing notice

of the informal interview, and a verification that an interviewing officer actually provided the informal interview. (*Id.*). Thus, this claim does not entitle petitioner to release.

***D. Immigration Judge Review Claim***

Petitioner cites to the regulation sections for asylum applications and for return to country of removal in his argument that an immigration judge must review the asylum officer's determination that it was not more likely than not that petitioner would be persecuted or tortured in Mexico if he were removed there as a third country removal. *See, e.g.*, (Docs. 9, at 22; 22, at 2). Petitioner has not cited to, and the Court is not aware of, any regulations that mandate an immigration judge review a credible fear determination regarding third country removal rather than as part of the asylum or withholding of removal application process. Likewise, petitioner has not cited to any binding caselaw finding the lack of such review a violation of due process.

Rather, the persuasive authority cited acknowledges that "[i]ndeed, there are no regulations that provide for a circumstance under which USCIS is given the authority to conduct fear-screening interviews without provided for independent review of that screening by an [immigration judge]." *Kassaye v. Mullin*, No. 1:26-cv-1648 (RDA/LRV), 2026 WL 1832368, at *7 (E.D. Va. June 24, 2026) (internal quotation marks removed). As there are no regulations which provide the credible fear interview, there are likewise no regulations that require review of that determination by an immigration judge. Here, the Court declines to extend the procedures offered. *See also Rennie v. Trump*, No. C25-4077-LTS-MAR, 2026 WL 299996, at *2 (N.D. Iowa Feb. 4, 2026) (finding no jurisdiction to review revocation of order of supervision); *Lang v. Napolitano*, 596 F.3d 426, 429 (8th Cir. 2010) (finding no jurisdiction by the district court to hear a claim for "injunctive and mandamus relief that would prohibit the agency from 'executing' that removal order"). Thus, this final claim also does not entitle petitioner to release.

## *IV. CONCLUSION*

For those reasons, petitioner's amended petition for writ of habeas corpus is **denied**. (Doc. 9). To the extent that petitioner makes passing references to a request for an evidentiary hearing, that request is also **denied**. *See* (Docs. 9, at 28; 22, at 1). Judgment shall issue in favor of respondents. The Clerk of Court is directed to close this case.

**IT IS SO ORDERED** this 24th day of August, 2026.

C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa